# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH BUDZINSKI,<br>1634 Springcress Road<br>Fort Wayne Indiana, 46814<br><br>*Individually and on behalf of all others similarly situated*<br>　　　　　　　　　　*Plaintiff,*<br>v.<br><br>MEHRI & SKALET, PLLC<br>2000 K St NW, Suite 325<br>Washington, DC 20006<br>　　　　　　　　　　*Defendant.* | Case No. 1:25-cv-04292<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joseph Budzinski ("Plaintiff"), individually and on behalf of other similarly situated individuals, by and through his undersigned attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, file this Class Action Complaint against Mehri & Skalet, PLLC ("M&S" or "Defendant") and allege the following based on personal knowledge, the investigation of counsel, and information and belief.

## NATURE OF THE ACTION

1. Plaintiff and other Class Members are individuals and current and former clients ("Clients") of Defendant who either entrusted or had their personally identifiable information ("PII") held by M&S. Defendant betrayed Plaintiff's trust by failing to properly safeguard and protect his PII and by disclosing his PII to cybercriminals.

2. This class action seeks to redress M&S's unlawful and negligent disclosure of Clients' PII in a massive data breach on December 17, 2024 ("Data Breach" or "Breach"), in violation of common law and in breach of express and implied contract.

1

3. For the rest of their lives, Plaintiff and the Class Members will bear an immediate and heightened risk of all manners of identity theft. Accordingly, Plaintiff brings this action as a direct and/or proximate result of the Data Breach. Plaintiff has incurred and will continue to incur damages in the form of, *inter alia*, loss of privacy and/or the additional damages set forth in detail below.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members, at least one Class Member is a citizen of a state that is diverse from M&S, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

5. This Court has personal jurisdiction over Mehri & Skalet, PLLC because M&S maintains its principal place of business in Washington, DC.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant maintains it principal place of business in the District and this District is one where a substantial part of the events or omissions giving rise to these claims occurred.

## PARTIES

7. Plaintiff Joseph Budzinski is a resident of Fort Wayne, Indiana. Mr. Budzinski received a letter from M&S informing him of the Data Breach on November 19, 2025. The letter informed Mr. Budzinski that his name and social security number had been compromised in the Data Breach. A copy of the data breach notice letter received by Plaintiff is attached hereto as Exhibit A ("Budzinski Data Breach Notification Letter"). Mr. Budzinski has never transacted with M&S and does not recall ever directly providing them his PII.

8. Defendant Mehri & Skalet, PLLC is a law firm and professional limited liability company (PLLC) organized under the laws of the state of the District of Columbia with its principal place of business in Washington, DC.

## FACTUAL BACKGROUND

I. **M&S's Data Breach and Communications to Clients**

9. On December 17, 2024, PII, including names and social security numbers, was accessed and downloaded by cyber criminals (the "Data Breach"). Exhibit A.

10. M&S became aware of this Data Breach on or about May 20, 2025. Exhibit A.

11. Plaintiff was first notified of the Data Breach via letter dated November 19, 2025, almost *six months* after M&S became aware of the Data Breach. The letter stated that the PII that was accessed and downloaded by the unauthorized actor included Plaintiff's name and Social Security number.

12. Mr. Budzinski has never transacted with M&S and is not aware of how M&S acquired his data.

13. In the letter sent to Mr. Budzinski, M&S provided access to only one year of credit monitoring services with IDX. Exhibit A.

14. The letter provided to Mr. Budzinski provided minimal information on the nature of the breach stating only that an "unauthorized actor" accessed "employee's email account and downloaded information". Exhibit A.

15. In a sample letter filed with the Vermont Attorney General on November 19, 2025, M&S indicated that it was willing to provide up to two years of credit monitoring services to Class Members. The letter is attached here as Exhibit B.

II. **Personally Identifiable Information (PII)**

3

16.　PII is of great value to hackers and cyber criminals, and the data compromised in this Data Breach can be used in a number of unlawful manners.

17.　PII is information that can be used to distinguish, identify, or trace an individual's identity, such as the Social Security Number and biometric records. This can be accomplished with the PII disclosed alone, or in combination with other personal or identifying information that is connected, or linked to an individual, such as their birthdate, birthplace, name, and mother's maiden name.[1]

18.　Given the nature of this Data Breach, it is foreseeable that hackers and cyber criminals can and will sue the compromised PII in a variety of different ways.

19.　Indeed, cyber criminals with Clients' PPI can easily obtain Clients' tax returns and/or file fraudulent tax returns in their names.

**III.　M&S Was Aware of The Risk of Data Breaches.**

20.　Indicating knowledge of the potential for a data breach, in their Privacy Notice for their clients posted on their public website, Defendant asserts that they "will take all steps reasonably necessary to ensure that Your data is treated securely and in accordance with this Privacy Policy and no transfer of Your Personal Data will take place to an organization or a country unless there are adequate controls in place including the security of Your data and other personal information.."[2] Despite acknowledging its obligations to implement proper security measures, Defendant failed to protect Plaintiff's and Class Members' PII from the Data Breach.

21.　Whoever was the individual, individuals, or organizations who obtained the PII of Clients, they can use this PII for their own nefarious purposes or sell this data on so-called "dark

---

[1] OFFICE OF MGMT. & BUDGET, OMB MEMORANDUM M-07-16 n.1.
[2] Transfer of Your Personal Data, Mehli & Skalet (last visited Dec.8, 2025), https://findjustice.com/privacy-policy/

markets." Having obtained Clients' Social Security Numbers and Names, the cybercriminals could commit a broad range of fraud including but not limited to: obtaining employment; obtaining a loan; applying for credit cards or spending money; filing fraudulent tax returns; obtaining medical care; and stealing government benefits.

**IV.     M&S's Current and Former Clients Have Suffered Concrete Injuries**

22.     M&S is a law firm based in Washington, DC, that lists its practice areas as employment law, civil rights, whistleblowers, insurance & health, sports law, consumer protection and consulting.[3]

23.     Clients were obligated to provide M&S with sensitive personal information, sometimes including their Social Security Number. Others, such as Mr. Budzinski, do not recall *ever* providing their PII to M&S.

24.     The cybercriminals will certainly use the Clients' PII, and the Clients are now, and will be for the rest of their lives, at a heightened risk of identity theft. Plaintiff brings this action because as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff has incurred and will continue to incur damages in the form of, *inter alia,* attempted identity theft, time and expenses mitigating harms (*e.g.*, the costs of engaging credit monitoring and protection services), increased risk of harm, diminished value of PII, and/or loss of privacy. By this action, Plaintiff seeks to hold M&S responsible for the harm caused by its negligence.

25.     Mr. Budzinski greatly values his data privacy. This is why he was startled to learn of the Data Breach upon receipt of the letter sent to him by M&S. Mr. Budzinski does not recall

---

[3] <u>Practice Areas</u>, Mehli & Skalet (last visited Dec. 8, 2025), https://findjustice.com/practice-areas/

ever transacting with M&S in any way, much less providing them with sensitive PII. Upon learning about the Data Breach, Mr. Budzinski immediately went to the bank to close off any access using his social security number and freeze his account, spending a great deal of time to do so.

26. Due to the Data Breach and the resulting concerns stemming from the compromise of his PII, Mr. Budzinski spent money buying Aura, a top identity theft protection service. He then lost multiple hours on the phone with the company ensuring that his data was secured.

27. In addition, as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and the other Class Members have been deprived of the value of their PII, for which there is a well-established national and international market. For example, stolen PII is sold on the cyber black market for $1 and $4000 depending what information has been stolen, to individuals focused on committing fraud or needing or wanting a new identity.[4]

28. Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the other Class Members at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.[5] Indeed, "[t]he level of risk is growing for anyone whose information is stolen in a data breach."[6] Javelin Strategy & Research, a leading provider of quantitative and qualitative research, notes that "[t]he theft of SSNs places consumers

---

[4] Ben Luthi, Here's What Your Data Sells for on the Dark Web, Experian (Jun. 30, 2025), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.
[5] Data Breach Victims More Likely To Suffer Identity Fraud, INSURANCE INFORMATION INSTITUTE BLOG (February 23, 2012), http://www.iii.org/insuranceindustryblog/?p=267.
[6] Susan Ladika, Study: Data Breaches Pose A Greater Risk, CREDITCARDS.COM (July 23, 2014), http://www.creditcards.com/credit-card-news/data-breach-id-theft-risk-increase-study-1282.php.

at a substantial risk of fraud."[7] Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. There is also a high probability that criminals who now possess Plaintiff's and the other Class Members' PII have not yet used the information but will do so at a later date or re-sell it.

## V. M&S's Response to The Data Breach Is Inadequate to Protect the Clients

29. M&S has failed to provide adequate compensation to the Clients harmed by its negligence. To date, M&S has offered Mr. Budzinski only one year of credit monitoring services. Exhibit A. According to the sample letter filed with the Vermont Attorney General, the maximum provided by M&S is two years of credit monitoring through IDX. Exhibit B.

30. Even for Clients who do accept the credit monitoring, this service will not provide Clients any compensation for the costs and burdens associated with fraudulent activity resulting from the Data Breach that took place prior to a client signing up for these services.

## CLASS ACTION ALLEGATIONS

31. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action against M&S as a class action on behalf of himself and all members of the following class of similarly situated persons (the "Class" or "Class Members"):

"All persons whose PII was compromised as a result of the Data Breach."

32. Plaintiff reserves the right to amend the above definition, or to propose other or additional classes, in subsequent pleadings and/or motions for class certification.

33. Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant have or had a controlling interest, or which Defendant

---

[7] THE CONSUMER DATA INSECURITY REPORT: EXAMINING THE DATA BREACH-IDENTITY FRAUD PARADIGM IN FOUR MAJOR METROPOLITAN AREAS, (available at http://www.nclnet.org/datainsecurity_report).

otherwise controls or controlled; and any legal representative, predecessor, successor, or assignee of Defendant.

34. This action satisfies the requirements for a class action under Rule 23.

35. Plaintiff based on information and belief that the proposed Class as described above consists of at least hundreds of members and can be identified through M&S's records, though the exact number and identities of Class members are currently unknown. The Class is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.

36. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class Members. Common questions include, but are not limited to, the following:

    a. Whether and to what extent M&S had a duty to protect the Class Members' PII.

    b. Whether M&S breached its duty to protect the Class Members' PII.

    c. Whether M&S disclosed Class Members' PII.

    d. Whether M&S timely, accurately, and adequately informed Class Members that their PII had been compromised.

    e. Whether M&S's conduct was negligent; and

    f. Whether Plaintiff and Class Members are entitled to damages.

37. The claims asserted by Plaintiff are typical of the claims of the Members of the Class he seeks to represent because, among other things, Plaintiff and Class Members sustained similar injuries as a result of M&S's uniform conduct; M&S owed the same duty to each Class Member; and Class Members' legal claims arise from the same conduct by M&S.

38. Plaintiff will fairly and adequately protect the interests of the proposed Class. Plaintiff's interests do not conflict with the Class Members' interests. Plaintiff has retained class counsel experienced in class action litigation to prosecute this case on behalf of the Class.

39. Prosecuting separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendant.

40. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the members in the Class are so numerous that joinder of all Class Members in a single proceeding would be impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class Members to prosecute their claims individually. Trial of Plaintiff and Class Members' claims on a class basis, however, is manageable. Unless the Class is certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

41. Certification of the Class, therefore, is appropriate under FED. R. CIV. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

42. Certification of the Class is also appropriate under FED. R. CIV. P. 23(b)(2) because M&S has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or equitable relief with respect to the Class as a whole.

43. Certification of the Class is also appropriate under FED. R. CIV. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of establishing incompatible standards of conduct for M&S.

44. M&S's wrongful actions, inaction, and omissions are generally applicable to the Class as a whole and, therefore, Plaintiff also seeks equitable remedies for the Class.

45. M&S's systemic policies and practices also make injunctive relief for the Class appropriate.

46. Absent a class action, M&S will retain the benefits of its wrongdoing despite its serious violations of the law and infliction of economic damages, injury, and harm on Plaintiff and Class Members.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**(Negligence)**

47. Plaintiff re-allege and incorporate by reference all preceding factual allegations as though fully set forth herein.

48. Plaintiff brings this claim on behalf of himself and the Class.

49. To perform its legal services, Defendant collects Plaintiff's and Class Members' PII from its clients.

50. M&S had full knowledge of the sensitivity of the PII and the type of harm that Plaintiff and the Class could and would suffer if the PII was wrongfully disclosed. M&S had a duty to Plaintiff and each Class Member to exercise reasonable care in holding, safeguarding, and protecting that information. Plaintiff and the Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the other Class Members had no ability to protect their data that was in M&S's possession

51. M&S had a duty to Plaintiff and Class Members to safeguard and protect their PII. M&S's duty to the Plaintiff and other Class Members included, *inter alia*, establishing processes

and procedures to protect the PII from wrongful disclosure and training clients who had access to the PII as to those processes and procedures.

52. Defendant assumed a duty of care to use reasonable means to secure and safeguard this PII, to prevent its disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems.

53. Defendant had a duty to use ordinary care in activities from which harm might be reasonably anticipated in connection with Clients' PII data.

54. Defendant breached its duty of care by failing to secure and safeguard the PII of Plaintiff and Class Members. Defendant negligently stored and/or maintained its systems.

55. Further, Defendant, by and through its above negligent actions and/or inaction, further breached its duties to Plaintiff and Class Members by failing to design, adopt, implement, control, manage, monitor, update, and audit its processes, controls, policies, procedures, and protocols for safeguarding and protecting Plaintiff's and Class Members' PII within its possession, custody, and control. M&S admitted that Plaintiff's and the other Class Members' PII was wrongfully disclosed as a result of the Data Breach.

56. Plaintiff and the other Class Members have suffered harm as a result of Defendant's negligence. These victims' loss of control over the compromised PII subjects each of them to a greatly enhanced risk of identity theft, fraud, and myriad other types of fraud and theft stemming from use of the compromised information.

57. It was reasonably foreseeable -- in that Defendant knew or should have known -- that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII would result in its release and disclosure to unauthorized third parties who, in turn,

wrongfully used such PII or disseminated it to other fraudsters for their wrongful use and for no lawful purpose.

58. But for Defendant's negligent and wrongful breach of its responsibilities and duties owed to Plaintiff and Class Members, their PII would not have been compromised.

59. As a direct and proximate result of Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' PII, Plaintiff and the Class Members have incurred (and will continue to incur) the above-referenced economic damages, and other actual injury and harm -- for which they are entitled to compensation. Defendants' wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence.

60. Plaintiff and Class Members are entitled to injunctive relief as well as actual and punitive damages.

## SECOND CAUSE OF ACTION
**(Unjust Enrichment)**

61. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

62. Plaintiff brings this claim on behalf of himself and the Class.

63. M&S, by way of its affirmative actions and omissions, knowingly and deliberately enriched itself by saving the costs it reasonably and contractually should have expended on data security measures to secure Plaintiff's and Class Members' PII.

64. Instead of providing for a reasonable level of security that would have prevented the disclosures, consisting of firewalls, data security trainings, and PII retention and destruction policies and procedures -- as is common practice among companies entrusted with such sensitive

personal information – M&S instead consciously and opportunistically calculated to increase its own profits at the expense of Plaintiff and Class Members.

65. Nevertheless, M&S continued to obtain the benefits conferred on it by Plaintiff's and Class Members' employment, mainly from the labor contracted to in the employment agreements between the parties.

66. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result. As a result of M&S's decision to profit rather than provide requisite security, and M&S's resultant disclosures of its Clients' PII, Plaintiff and Class Members suffered and continue to suffer considerable injuries in the forms of attempted identity theft, time and expenses mitigating harms, diminished value of PII, loss of privacy, and increased risk of harm.

67. Thus, M&S engaged in an opportunistic material breach of contract, wherein it profited from interference with Plaintiff's and Class Members' legally protected interests. As such, it would be inequitable, unconscionable, and unlawful to permit M&S to retain the benefits it derived as a consequence of its breach.

68. Accordingly, Plaintiff, on behalf of himself and the Class Members, respectfully requests this Court award relief in the form of restitution and/or compensatory damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully request that the Court grant relief against Defendant as follows:

a. For an Order certifying the proposed Class pursuant to FED. R. CIV. P. 23(b)(1), (2) and/or (3), requiring notice thereto to be paid by Defendant, and appointing Plaintiff and his counsel to represent the Class.

b. For appropriate injunctive relief and/or declaratory relief, including an Order requiring Defendant to immediately secure and fully encrypt all confidential information, to properly secure computers containing confidential information, to cease negligently storing, handling, and securing its clients' confidential information, and to provide identity theft monitoring for an additional five years.

c. Adjudging and decreeing that Defendant has engaged in the conduct alleged herein.

d. For compensatory, statutory, and general damages according to proof on certain causes of action.

e. For reimbursement, restitution, and disgorgement on certain causes of action.

f. For both pre- and post-judgment interest at the maximum allowable rate on any amount awarded.

g. For costs of the proceedings herein.

h. For an Order awarding Plaintiff and the Class reasonable attorney's fees and expenses for the costs of this suit; and

i. For any and all such other and further relief that this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury of all claims and causes of action in this lawsuit to which he is so entitled.

Dated: December 10, 2025,			Respectfully submitted,

			*/s/ David Lietz*
			David K. Lietz
			**MILBERG PLLC**
			5335 Wisconsin Ave., NW, Suite 440
			Washington, DC 20015
			Phone: 866.252.0878

dlietz@milberg.com

Todd S. Garber (pro hac vice forthcoming)
**FINKELSTEIN, BLANKINSHIP**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Tel.: (914) 298-3281
tgarber@fbfglaw.com

*Attorneys for Plaintiff and the Proposed Class*